By the Court. Sandford, J.
The principle has long been established in this state, by a series of authorities, that a security given by a friend of an insolvent, pending his application for a discharge from his debts, to induce a hostile creditor either to join in the petition for such discharge, or to withdraw his objections to its being granted, is void, as being contrary to the policy of the insolvent law. All the cases to which we have been referred, arose under the statute for discharging an insolvent from his debts, upon the application of two-thirds of his creditors; and in all, the arrangement was made by the insolvent himself, or through his intervention.
Our decisions were founded upon those made in England, under the bankrupt act 5 Geo. 2, by which the debtor was prevented' from obtaining his certificate, unless four-fifths of his creditors united in a petition that it should be granted. The act also made it unlawful for the bankrupt, or for any person, tó give any money or property to a creditor to induce him to sign the certificate. The subsequent bankrupt acts reduced to three-fifths the proportion of the creditors necessary for a discharge. Under these acts, it was held in England, nearly a century ago, and such has been the law ever since, that a bond given by a relative of the bankrupt to a creditor, who would not otherwise sign the certificate, was illegal and void. The decisions were in accordance with the positive enactment of the *455 statute; but when a case arose, not within the provision, though against the policy of the act, Lord Tenterden said the security was not void, and a bona, fide holder might recover upon it. (Birch v. Jervis, 3 Carr. & P. 379.)
It will be observed, that in respect of the conjunction of a large proportion of the creditors in making a certificate effectual to discharge the bankrupt, the English bankrupt acts are entirely analogous to our statute for the discharge of an insolvent debtor, on the petition of two-thirds of his creditors. And the principle upon which preferences and purchased assents, should be deemed invalid, is equally applicable to both. There are cases in which securities have been adjudged void; but it is not, under the circumstances, necessary to advert to them in detail. All the authorities are founded upon one or the other of the grounds, that the payment or security made to the favored creditor, is contrary to the provision of the statute, detrimental to the rights or interests of third persons, oppressive upon the insolvent, or a fraud upon his other creditors.
In the instance of the bankrupt certificate in England, and the petition of two-thirds of the creditors under our insolvent act, the signature of each creditor by turn, has its influence upon others to whom the instrument is presented. It may induce some to concur by its example of generosity, and may lull the vigilance of others by its apparent assent to the justice of a discharge.
In instances of composition deeds and the like, which are parallel in principle, as well as in those last referred to, if the sum paid or promised to the favored creditor, be from the bankrupt’s own funds, it is a direct fraud upon the other creditors, in diminishing the dividend théy would otherwise receive. Or, if given after the discharge, on a promise or obligation made previously, it is an unfair advantage taken of the debtor ; and may be open to the remark, that it diminishes the chance of all the other creditors of receiving payment out of his future acquisitions, if he should be so honest as to discharge his moral .obligations. The late bankrupt act of 1841, has no provision analogous to those upon which we have commented, contained in our insolvent law and the English bankrupt acts. In the *456 proceeding adverse to the bankrupt, each creditor was at liberty to act for himself, and could withdraw his proceeding, if he thought proper. When the bankrupt was the applicant, each creditor resisted for himself; and before he could oppose at all, it was necessary that he should prove his debt.
So far as the authorities adverted to, proceed on positive law, or on the supposed influence of signatures and names upon other creditors, it is evident they are not applicable in principle to the bankrupt act of 1841. The same thing may be said of all those cases which arose upon payments made, or securities given, out of the effects of the bankrupt or insolvent, obligatory upon him.
To apply these considerations to the case before us. The three judgment creditors had proved their demands, and opposed the discharge of Corse, with a prospect of ultimately defeating it. It seems probable there was no good cause for this opposition, but that is not material, as we regard the point. The testator, without the connivance or knowledge of Corse, and without any collusion on his part, arranged with the three creditors to give the testator’s notes for a portion of their debts, on receiving an assignment of the judgments ; the notes and assignments to be delivered by the depositary to the creditors whenever Corse should be discharged. The principal consideration for the notes, was the withdrawal of their opposition to his discharge. But how does this affect their validity ?
If when the notes were signed by the testator, in December, 1845, he had, for the same considerations, actually delivered them to the creditors, and received the assignments, there would have been no good objection to a recovery upon the notes. The testator, as the owner of the judgments, could withdraw the opposition founded upon them, and the agreement of the creditors to withdraw their opposition when they had ceased to have a right to make any, would be altogether idle and unmeaning.
Are the notes any the less valid, because they were to be retained by the depositary until Corse was actually discharged ? We have seen that the case is not within the principle of the insolvent act requiring two-thirds, and of the English bankrupt certificate.
*457 It is certain that the arrangement was not oppressive upon Corse, because he did not know of it, and was not to participate in it. It was no fraud upon his other creditors, for it is not shown that there was any other creditor who had ever put himself in a condition to oppose the discharge. If there were others who had proved their debts, and had stood back, relying upon these three creditors to fight the battle at their own expense, for the benefit of all the creditors ; we do not perceive that such others had any right to insist on the continuance of the warfare, or would be entitled to any sympathy, if it were terminated without their concurrence.
There is no aspect of the arrangement, in which it was detrimental to the rights or interests of third persons. It legitimately affected no one, except the testator, who was satisfied with the consideration he received. As to its sufficiency, we will speak presently.
Although, on the first statement of the case, we were under the impression that the spirit of the adjudged cases was against the plaintiff, we are satisfied on an analysis of their principles, that there is no good reason for holding that the acceptance of the notes was contrary to the policy of the bankrupt act, or against public justice.
We have found no authority which holds that a note thus given, without the procurement, connivance, or knowledge of the bankrupt, and in no manner affecting his property, present or future, is void. On the contrary, there is a decision of a distinguished judge, which in principle, appears to sustain an obligation given under such circumstances. In Winsor v. Kendall, (3 Story R. 507,) it was decided, that a payment made by a friend of a bankrupt, in contemplation of bankruptcy, out of his own funds, or in such a manner that the creditor had a right to suppose he was paying out of his own funds, and not out of those of the bankrupt, was not a fraudulent preference, within the meaning of the bankrupt act.
In England, where the bankrupt acts have been far more stringent than either of those enacted by Congress, it has been held, that a creditor may sell his debt to a friend of a bankrupt debtor, upon the terms that the creditor should sue out a commission of bankruptcy against the debtor. (Fry v. Malcolm, 5 *458 Taunt. 117.) And we perceive no good reason, why under the act of 1841, a friend of the bankrupt might not buy the debt of an opposing creditor, so as to remove such opposition; provided the bankrupt himself was neither a party, or privy to the arrangement, and his effects were not to be made liable for the purchase.
It is made a point, that the notes were without consideration. The assignment of the judgments was a sufficient consideration. We have no means of knowing, either that they were wholly worthless, or what circumstances induced' the testator to estimate them as valuable.
A new trial must be granted; the costs to abide the event of the suit.(a)

 In Fox v. Paine, (10 Alabama Rep., New Series, 523,) it was held, that the fact that the bankrupt, or some one for him, paid money to a creditor, to induce him to withdraw his objections to the bankrupt’s discharge, is not such a fraud as will render the certificate inoperative. The court considered the circumstance that under the English bankrupt acts, it was necessary that four-fifths, and after-wards three-fifths, of the creditors to consent in writing to the bankrupt’s discharge, as being the ground of the decisions relied upon by the defendant’s counsel, and as distinguishing the case before them from those decisions.